WILLIAM KINGSLEY, ACTING DIRECTOR, DIVISION OF TAXATION, DEPARTMENT OF THE TREASURY, STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. WES OUTDOOR ADVERTISING COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.

Argued May 10 and 25, 1971—Decided July 26, 1971.

*Mr. Theodore Sager Meth* argued the cause for appellant (*Messrs. Meth and Wood,* attorneys).

*Mr. Richard M. Conley,* Deputy Attorney General, argued the cause for respondent (*Mr. George F. Kugler, Jr.,* Attorney General of New Jersey; *Mr. Stephen Skillman,* Assistant Attorney General, of counsel; *Mr. Conley,* on the brief).

The opinion of the court was delivered by

MOUNTAIN, J.   Many of the background facts in this case appear in *Kingsley v. Wes Outdoor Advertising Co.*, 106 *N. J. Super.* 248 (Ocean Cty. D. Ct. 1969), aff'd 55 *N. J.* 336 (1970).

Wes Outdoor Advertising Co. (Company) erected and maintained a number of outdoor advertising signs or structures without first securing permits as required by the Outdoor Advertising Act, *N. J. S. A.* 54:40–54. The Division of Taxation, acting through the State Supervisor, Outdoor Advertising Tax Bureau, directed the Company to remove them. This was not done and suit was instituted in the Ocean County District Court seeking the imposition of penalties (*N. J. S. A.* 54:40–65) and the recovery of the expense to which the State had been put in removing certain of the signs. (*N. J. S. A.* 54:40–57). The District Court substantially sustained the position of the Division and imposed a penalty of $100 per day for each violation. The total penalty for all violations thus amounted to $57,200, there having been 572 days of separate infractions. To this was added the cost of removing the four structures ($1,015) together with an identical amount assessed as an additional penalty pursuant to *N. J. S. A.* 54:40–57. Thus on July 14, 1969 judgment was entered against the Company in the total amount of $59,230 together with costs.

At the trial the defendant had confined itself largely to the single argument that the District Court was without jurisdiction to enter judgment in an amount larger than $1,000 (that having then been the monetary jurisdictional limit of that court as fixed by statute).[1] This issue was determined both in the District Court and in this court on appeal adversely to the Company's contention.

Simultaneously with the commencement of the suit described above, on February 25, 1969, the Company insti-

---

[1] *N. J. S. A.* 2A:6–34 was thereafter amended by *L.* 1969, c. 177, § 1 to increase this amount to $3,000.

tuted an action in lieu of prerogative writs in the Law Division of the Superior Court naming the Director of the Division of Taxation and the State Supervisor, Outdoor Advertising Tax Bureau, as defendants. This suit sought to enjoin defendants from removing the signs and demanded a declaration that portions of the Outdoor Advertising Act were unconstitutional and that plaintiff was entitled to receive permits for the signs or structures in question. A temporary restraining order issued upon the filing of the complaint but was dissolved May 9, 1969 at which time the action was dismissed with prejudice.

Thereafter on October 28, 1969 the Director of the Division of Taxation, through the Attorney General, caused a writ of execution to issue to the Sheriff of the County of Ocean seeking to satisfy the judgment. On November 28, 1969 execution was stayed, but this stay was thereafter lifted and on January 9, 1970 the sheriff levied upon certain property allegedly owned by the Company. On January 22, Wesley K. Bell, the actual owner of the Company, filed a claim of property with the sheriff, demanding that the goods and chattels upon which the levy had been made be delivered to him, as being his personal property and not that of the Company. Upon the sheriff refusing this demand, Bell instituted a further plenary suit, this time in the Ocean County Court, alleging that he was the owner of the property in question, reciting the entry of the aforementioned judgment, the issuance of the writ of execution, the levy made by the sheriff, his own claim of property and the refusal of the sheriff to surrender the goods and chattels. The suit sought a determination as to the ownership of the property. An order issued directing the Attorney General and the sheriff to show cause why the relief sought in the complaint should not be granted and temporarily restraining them from taking any further action looking to a sale of the property. Thereafter apparently the return day of the order to show cause was continued from time to time.

At this point events took a rather bizarre turn. On May 1, 1970, a consent judgment was entered in the suit pending in the Ocean County Court expunging the judgment originally entered in favor of the State against the Company in the Ocean County District Court, "[u]pon the condition that Wesley K. Bell, individually, be substituted therefor as judgment debtor *nunc pro tunc,* which is based upon assurances received from the said Wesley K. Bell that he individually is the owner of all billboards, ground leases, automobiles, accounts receivable, checking accounts and bank accounts and all other properties, real, personal and intangible, of the Wes Outdoor Advertising Company, a corporation of the State of New Jersey." On the same day, the Director of the Division of Taxation caused a writ of execution to issue to the Sheriff of Ocean County directed against the property and assets of the new judgment debtor, Wesley K. Bell.

The reason motivating Bell in having himself substituted as judgment debtor soon became apparent. On May 7 he moved for an order directing that he be committed to the Ocean County jail for a period not to exceed 30 days pursuant to the provisions of *N. J. S. A.* 54:40–67. To understand Bell's purpose it is necessary to set forth a portion of this statute, which reads as follows:

If judgment shall be rendered for the plaintiff, the court shall cause any defendant who may refuse or fail to pay forthwith the amount of the judgment rendered against him and all costs and charges incident thereto to be committed to the county jail for a period not exceeding 30 days.

If a defendant who is committed to jail in default of payment of the penalty shall serve the full period for which he shall be committed, upon his release from jail he shall be entitled to have the judgment satisfied of record, and the certificate of the warden of said jail that the said defendant has been detained for the period specified in the commitment which the judgment for the penalty and costs is docketed to discharge the same of record.

Bell argued that since he had not paid the judgment, and refused to do so, the statute mandated that he be jailed forthwith for a period not exceeding 30 days. He further argued

that at the end of this period of incarceration, he would leave the prison entitled—in accordance with the statute—to have the judgment in the amount of $59,230 discharged of record.

The Attorney General countered with an equally startling proposal. He had no objection, he said, to Bell being jailed, but since there had been 572 violations the statute required incarceration for 30 days in respect of each. Thus the jail sentence should be for a total of 17,160 days or approximately 47 years.

The judge, understandably, denied both motions. Bell appealed to the Appellate Division and this court granted certification.

It is here argued for the first time that the factual determination of the District Court that there had been violations upon 572 days was incorrect. It is pointed out that in the letters written by the Supervisor of the Outdoor Advertising Tax Bureau to Bell directing him to remove the offending structures, it had been stated that he might in each case have 30 days within which to comply. It is now contended that although the structures were not removed during the 30-day grace periods nonetheless these periods should not be included in calculating the total violations. Secondly, it is urged that the periods of time when removal of the signs was stayed by court orders should not be included.

In the first place the factual determination of the District Court cannot be attacked at this time and in this Court. The moment for such a challenge has long since passed. Not only was this not made an issue on appeal when this suit was previously before this Court, it was not raised below following this Court's affirmance of the original District Court judgment. In any event such a contention should usually be made at the trial level pursuant to *R.* 4:50–1. This rule allows relief from a judgment in proper circumstances but such relief can be granted only by the original trial court, by an appellate court in direct review of the judgment challenged or by an appellate court in review of a trial court's denial of a motion to vacate. *Hodgson v. Applegate,* 31 *N. J.*

29, 37–38 (1959) ; *Greenberg v. Owens,* 31 *N. J.* 402, 405 (1960) ; *State by Hilgendorff v. American Can Co.,* 42 *N. J.* 32, 42 (1964), *cert.* den. 379 *U. S.* 826, 85 S. Ct. 53, 13 L. Ed. 2d 36 (1964) ; *Lippincott v. Godfrey,* 103 *N. J. L.* 407, 409 (E. & A. 1926). Or as Justice Kalisch phrased it in *Lippincott v. Godfrey, supra,* "the validity of the judgment could only be properly subject to an attack by a motion to vacate the judgment in the court where such judgment was entered, or by an appeal therefrom, and not in the collateral manner * * *" 103 *N. J. L.* at 409. See also *McCahill v. Equitable Life Assurance Society,* 26 *N. J. Eq.* 531, 538 (E. & A. 1875). Such is not here the case. The collateral attack now made is not directed against the judgment under review but rather against a prior judgment concerning the same subject matter. Collateral attacks generally are not to be recognized in the absence of fraud or a lack of jurisdiction or similarly cogent equitable reasons. *Drachenberg v. Drachenberg,* 4 *N. J. Super.* 510, 513 (App. Div. 1949) ; *Catabene v. Wallner,* 16 *N. J. Super.* 597, 601 (App. Div. 1951).

But even were we disposed to entertain these contentions, it is apparent that they have no validity. The 30-day periods of grace were clearly conditioned upon the removal of the offensive structures within the prescribed periods. Since this was not done, the District Court was entirely correct in including these periods in its calculation of penalties.

There is even less to be said for the argument that violations were not continuing while stays were outstanding. The stays had been procured by Bell *ex parte* and it must be obvious that a violator cannot minimize or otherwise mitigate the consequences of his violation by self-serving action that he initiates.

We come then to the question as to whether Bell's reading and interpretation of the statute quoted above can be sustained. We are convinced it cannot. Where a statute such as that we are considering offers alternative means of

enforcement and alternative penalties for its violation, it is not the miscreant but rather the enforcing agency in the first instance and the courts in the latter that decide which shall be chosen. *State v. Fary,* 16 *N. J.* 317, 324 (1954), *State v. Reed,* 34 *N. J.* 554, 572–573 (1961); *State v. States,* 44 *N. J.* 285, 292 (1965). And see also *State v. Terry,* 30 *N. J. Super.* 288, 291 (App. Div. 1954). The choice does not rest in the hands of the violator. The statutory language with respect to a jail sentence, which we have quoted above, is an available sanction to aid in enforcing the law, to be invoked or not by the court as it sees fit. It was not intended to afford an avenue of relief to the violator.

What has been said effectively disposes of the matters that are strictly before us on appeal. We are, however, concerned with the magnitude of the penalty. Sixty thousand dollars is clearly a disproportionate amount to be exacted for the illegal erection and maintenance of about a dozen signs. This is true even when full account is taken of the contumacious and refractory conduct of the offender. While the State urges that we leave the judgment undisturbed, it appears not to question our power to modify the amount of the penalty. Our authority of appellate review is clearly ample for the purpose. *State v. Laws,* 51 *N. J.* 494, 500, *cert.* den. 393 *U. S.* 971, 89 S. Ct. 408, 21 L. Ed. 2d 384 (1968). "It is settled in this state that an appellate court has the power to review any exercise of the trial court's discretion * * *." *State v. Bess,* 53 *N. J.* 10, 18 (1968). In an exercise of this power, we modify the judgment of the District Court entered July 14, 1969 to the end that it be reduced from $59,230 to $10,000 with interest from the aforesaid date of entry, together with costs.

As so modified the judgment below is affirmed.

*For affirmance as modified*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and MOUNTAIN—7.

*For reversal*—None.